We'll move to the next case, TRB. May it please the Court, my name is Alan Reiter and I represent the plaintiff appellants in this case, TRB. The subpoenas at issue here and the motion to compel arise from an action pending in the District Court in Oregon. The plaintiffs in that case are Adidas and Reebok, and in that case they've made the claim that TRB has infringed on certain of their trademarks. One of the trademarks that is at issue in that litigation is the logo RBK, which at one point was used by Reebok on their clothing and on their shoes. Is your client's RBK or RBX? My client is TRB, which uses a mark. That's what I mean. That is RBX, but the name of the client. Is that a part, the use of that is part of the case in Oregon? Reebok is claiming that RBX infringes on its RBK trademark. Now, the reason we ended up subpoenaing the leagues and then moving to discovery, we had learned that Reebok in 2007 stopped putting RBK on anything. We learned that because of a subpoena. We served on a non-party, which gave us a document that Reebok had generated, but had never actually produced to us, in which it set forth Who was the third party? Can you describe just generally? It was a licensee of Reebok, and the name escapes me at this moment. It's called Backflips. Backflips, in or around 2007, received this document, and this document laid out Reebok's plans to shift its branding from RBK to the word mark Reebok over the course of 2007 through 2009 or 2010. In that rollout plan, specifically referred to the communications it was planning on having with the NHL and the NFL with respect to its plans to Now, at the time, Reebok had licensing agreements with both of those leagues. Is your analysis any different with respect to the NHL and NFL entities? No, it is the same, Your Honor, because there were licensing agreements between Reebok and those leagues, and we believed, based upon that document, in which Reebok specifically stated its intent to communicate its rebranding decisions to each of those leagues, that there were such communications. And as per the letter that we filed yesterday, on Friday, for the very first time, a year after we, more than a year after we had served document demands seeking this information, Reebok actually produced, on Friday, documents showing that it had, in fact, communicated with the leagues concerning its plans to rebrand itself from RBK to Reebok. Was that production, was that pursuant to the Oregon orders as opposed to the Southern District of New York? Yes, Your Honor. The Southern District didn't have authority . . . I just wanted to know, because that's one of the things that makes this kind of awfully either complicated or unusual, I'm not sure which, because you have a judge . . . we're talking about what a judge in the Southern District of New York did, and we're talking about what abusive discretion by this judge, who really is not involved in the case, is just involved in these subpoenas. Usually, we're once removed and asked to overturn on abusive discretion grounds. Now, in a sense, we're twice removed. She, meaning Judge Cote, made . . . and I think I'm pointing in the right direction. She exercised her discretion in a case that she was not in charge of, and that, I would think, makes it very difficult for us and for her. Well, the issue is . . . It's also a case where she does not want to undermine what's going on in another district. Right. Except that under Rule 45, parties are required to subpoena if a party is litigating in one district court. I'm not doubting at all the necessity of your having gone there. I'm not saying there's anything wrong with it. I'm just trying to reflect on the difficulty of our making a judgment as to the Southern District of New York exercise of discretion. I think that task is easier than Your Honor is suggesting, because in the course of rendering her decision below, the judge, in a very informal way, and using quite informal language, listed a series of reasons as to why she was denying the motion to compel. None of those reasons withstand scrutiny. You're talking about the eight different ways? Whatever the number was. In each of those ways, if one looks at them cumulatively or individually, none of those withstand analysis. For example, the judge said, if these documents were important, we would have sought them earlier than we did, and we would have made the motion to compel sooner than we did. But we made the motion to compel. We're here today. Those documents are important to us. That ruling contradicted another statement that the judge made, which was that we should have made it six months before, plus we should have pursued Reebok harder than we did. What is your strongest argument? Looking at those eight ways where you think that the district court abused its discretion, what is your best argument? Which one or ones? I think they actually are all equally improper. There is no factual basis. There is no legal basis for any one of them. And I suppose the court could say, well, maybe it would be just. You're saying there's an erroneous finding of fact. There's an erroneous finding of fact. There's a misapplication of the law governing Rule 45. And the court below engaged in sheer speculation about whether these documents were important to us, whether these documents might contain information that would be relevant in the case. The relevance cannot seriously be at issue. If a party ceases using a trademark and at the time of doing so declares an intent or an intent can be inferred that they are not going to reuse that trademark, it would constitute an abandonment of that trademark. So what the leagues were told by Reebok, what the words that Reebok used to describe its intent could result in a finding by the district court in Oregon that in fact they did abandon that. And this arises in the context. At the time we made the motion to compel, Reebok had produced around 40,000 documents. Not one of those documents, not a single document addressed the decision they made back in 2007 to drop the use of RBK and switch to Reebok. It was only the backflips document that articulated the reason and also, conveniently for us, indicated Reebok's intent to communicate with the NHL and the NFO with respect to that decision. Are you suggesting that they were in contempt of court by not having turned that over? It's a strong word, but you're suggesting that they had stuff that they were required to turn over and didn't turn over and you found out about it by getting it from a third party. Well, as I said, we got documents on Friday that should have been turned over a year and a half before. Whether that constitutes contempt. Back to Thursday, then. Okay. I'm not debating the date, but whether it's contempt or whether it justifies, in fact, the dismissal of their case against us because it is not the first but is about the sixth or seventh time in which they have violated their discovery obligations. You would prefer that to the contempt? Well, yes, I would, Your Honor, because that's a complete resolution. And the issue as to Reeboks and Adidas' violation of their discovery obligations is not before the court, but it's because we never had gotten a single document. And we knew from the record, from that backflips document, that the only way at that point that we could get it would be from the leagues themselves that we serve the subpoenas on the league and then move to compel. Another aspect. You served the subpoenas in June and July of 2016. Is that correct? I believe that is correct. And there was a long, drawn-out series of communications and attempts. It wasn't until January of 2017 that you had the motion to compel, right? We were still fighting with Reebok over trying to get documents, and only when discovery was about to close did we realize at this point that we had to try to enforce those subpoenas because Reebok has, and there's no dispute about this, a very draconian and very aggressive, euphemistically referred to as a document retention policy. What it really is is a document destruction policy. And they've told us from the very beginning of this case that they routinely  In fact, at the beginning of the case, they refused to turn over anything that they did have that was beyond five years. So we've had a long series of fights with Reebok. As a result of those fights and of the recent order that we submitted to the court, fact discovery is still ongoing. We had no notice in advance of Friday that we were going to actually, for the first time, be seeing communications between Reebok and the leagues. What we do know is that all those documents came from a single custodian. There could be multiple custodians whom they are now researching. Who was the custodian? It was an individual at Reebok who had responsibility for communicating with the leagues. And so when the judge said it's sheer speculation that the leagues would actually have anything, we believe that that was an abuse of discretion because the backflips document showed that Reebok intended to communicate with the leagues. When the judge said, I'm concerned about an appearance issue with respect to the District of Oregon, that finding really undercuts Rule 45. Because under Rule 45, we had no choice but to bring the motion to compel here. We couldn't bring it in Oregon because they were not subject to jurisdiction in Oregon. You have three minutes for rebuttal. Thanks. Thank you. Good afternoon, Your Honors. May it please the Court for NHL Enterprises, NFL Properties, and the National Football League. Can I ask you just at the outset? Yes, Your Honor. You've got their two separate briefs, the NFL and the NHL. Are there any meaningful substantive differences? I think the only difference, and I don't think it's meaningful, is the discovery period that TRB wanted the NHL to search was ten years and the NFL period was four years. We think both are unduly burdensome. But as a matter of law, and I think we mentioned this in our brief, Your Honor, the legal arguments are the same. TRB's motion to compel reflects a backwards approach to discovery. That is, pursuing documents from a third party rather than from a party to the litigation that unquestionably is in the best position to produce the underlying information. Where is it written that that has to take place? Well, this Court has held repeatedly that where a party seeking discovery from a third party has other avenues that are either more accessible or can be from a party to the litigation, then that avenue should be pursued first. That was this Court's holding, I think, Your Honor, Judge Hall and Judge Sack, in the In re Agent Arnn case where one of the parties produced documents. In an MDL case you held as part of that panel, don't burden a third party until you exhaust discovery from the party. Now, based on the record before her, which respectfully is the only thing this Court should consider on this motion, Judge Code identified at least four, maybe as many as eight, but I counted four, separate, independent, and proper reasons to deny TRB's motion. First, TRB had the ability to pursue the documents from Reebok. After all, this is about Reebok's use of its trademarks and Reebok's branding strategy. And to grant the motion would . . . In one view of what you're looking for in Reebok, isn't it, or what they are looking for in Reebok, give us your smoking guns, right? Well, I'm not sure I understand the question, Judge Hall. Forgive me. They're looking for stuff with which to stick Reebok, right? They are, but that doesn't mean Reebok can avoid its discovery obligations. And what Judge Code was concerned about was TRB represented after a long delay. It was finally going to move to compel these documents from Reebok when it should have done it back in the summer of 16. And lo and behold, even though it's not before this Court, Reebok had the documents. And what Judge Code was troubled by was for her to rule on the issues that were to be presented to the district court in Oregon, the trial judge, the judge who's deciding the issues in the case, who's in the best position here to pass on these documents. In those circumstances, it would create an appearance issue, an issue of comedy. Judge Code also recognized, based on the information submitted by the leagues, that the burden TRB was seeking to put the defendants to, the third parties rather, was tremendous. And finally, she found that TRB had not shown that either league had information about Reebok's branding strategy that TRB could not get from Reebok, the party whose branding strategy is at issue. How about in terms of the narrowing of the inquiry that TRB is seeking, as it mentions in its notes in its reply brief? Even those narrowed requests saw the NFL to search documents for a four-year period. We estimated that would lead to at least 17,000 documents that would have to be reviewed. For the NHL, it's even more than that. How much would that cost, would you say? Probably $200,000. And for the NHL, it would be significantly more than that, Your Honor, because, again, what Reebok was seeking for the NHL was more than two and a half times that, a ten-year period. And again, looking at the proportionality factors under Rule 26, when TRB had an avenue that it ignored for a year, which is to file a motion to compel before Judge Simon and the District of Oregon, they ignored that option for a year, even waiting three months after Judge Coates' decision to find the information. When Reebok is in the best position, again, the NHL . . . Are you saying they finally did make such a motion or that they never did? So, Reebok . . . TRB, forgive me, Judge Sack, TRB finally made a motion to compel before the District of Oregon on June 28th of 2017. So to go back to your timeline, Judge Katzmann, the subpoenas were served, I think, actually in May of 2016. The NHL served its responses and objections in June of 2016, the NFL, July 1st of 2016. There was one meet and confer in August, and at that point it was clear our position was, this is about Reebok's trademarks, Reebok's non-use of those trademarks, Reebok's products. You should be able to get this from Reebok. You certainly haven't run it to the ground. At that point, there was no back and forth. There was no negotiation. There was silence. What counsel should have done and what Judge Cote correctly found they should have done was take the avenue that they eventually did, which is to pursue that information from a party to the litigation, from Reebok. Your Honor, it's unclear . . . there were two categories of documents at issue. It's unclear whether TRB is still seeking any agreements between Reebok and the leagues. They indicated they withdrew some, but not all. So let me briefly address that. As Judge Cote found, Reebok unquestionably was in possession of its license agreements with the league and had an ability and should and could pursue that ability, the ability to get those documents from Reebok. Judge Cote also found there was an appearance issue because if that motion to compel was being made, again, that's the judge who should be deciding that issue. As perhaps best evidence of TRB's lack of diligence, I learned yesterday from counsel that one of the agreements that's at issue before the court was omitted from their motion to compel before the District of Oregon. So given TRB's laxity in pursuing this information from a party to the case, they can hardly and should not be allowed to come to this court to seek the information. What is the appearance issue with respect to other communications between Reebok and the NFL? If Reebok doesn't have the documents, but you have at least 15,000 communications with Reebok, let's say, why is it inappropriate to get them from you? Well, I think both issues were being teed up with the district court, so I think that's why there was an appearance issue. To be clear, in terms of the 15,000 hits or 17,000 for the NFL, Chief Judge Katzmann, that was using the search term that TRB argued we should be required to search, which is to search every document, every email, every electronic document for the word RBK, which is not only a brand of Reebok's, but it's a commonly used abbreviation for Reebok. And, in fact, I looked at some of the hits, obviously not all 15,000 or 17,000 of them, and the emails I saw when people were using RBK was, we have a meeting at RBK, or did you get the jersey from RBK? So, again, this was the proverbial needle in the haystack when all along, as we now know, Reebok had this information. The slogan of the NHL store in New York seems to have changed, right, from NHL powered by RBK to NHL powered by Reebok sometime between April and September of 2009. And if we accept that the store is actually run by Reebok, don't you think it's likely that Reebok would have had some communications with the NHL about changing the slogan? And doesn't that implicate the issue of whether the RBK mark was abandoned? Well, I think those communications certainly could have existed, but to comply with the proportionality requirements of Rule 26, TRB has a much higher burden, as Judge Cote recognized. Again, given the lack of diligence TRB demonstrated in running those issues to the ground with Reebok, who, again, is in the best position to provide information about why it is or isn't using marks, again, this is about Reebok's state of mind, not the NHL's state of mind. And given the party's relative access, which is another important factor under the proportionality analysis, Reebok, of course, has access to this information. We know that now because they produced it. They produced it last Friday. How does the subpoenas in this case fit in with this notion that Reebok only keeps e-mails for five years? I mean, for example, could they ask for all such documents that precede whatever the blackout date is? Well, the blackout date is a red herring, as we set forth to Judge Cote and in our papers to this Court. We know that because what TRB claimed was Reebok destroys all its documents from prior to 2010. We reached out to Reebok's counsel, and, in fact, they represented in the declaration before Judge Cote, they produced more than 6,000 documents from before 2010. The documents that Reebok produced last Friday, there were about 50 or 60 of them. I've only seen four. Counsel's seen all of them. I've only seen the ones that are communications with my client. They were from 2008. So this notion that Reebok— So there is no— You know, what counsel conceded is that Reebok has—there is a deletion policy, but individual employees have the ability to save e-mails, as most of us do, and that doesn't affect documents on the server. And we know Reebok, in fact, has produced many, many documents before 2010. And so this is a red herring. Well, it's possible, then, that some of them you do have that Reebok doesn't have because of this policy. It's theoretically possible, but, respectfully, third-party discovery requires a much higher standard, particularly when TRB spent a year before moving to compel the documents from Reebok, which Judge Cote found was clear evidence that this was not a critical issue in the case. And, again, it's only two of Reebok's products line. Reebok has many, many product lines. So even if they had abandoned them with respect to these two product lines, it's not dispositive on the abandonment issue. But in any event, what TRB should have done, as Judge Cote found, was run the issues to ground before the district court judge in the District of Oregon. That's what it did not do. Thank you. The injustice of the position taken by the leagues here is that, in the District of Oregon, Reebok's counsel has deliberately, perhaps not deliberately, perhaps simply negligently, but one way or another, completely violated its discovery obligations as a plaintiff in a case before a federal district court. It is not the law and it is not the fact that we waited a year to force Reebok to produce these documents. Reebok did give us 6,100 documents predating 2010. Not one of them addressed its decision to rebrand back in 2007. And in response to our document demands, seeking all the documents that are at issue in the motion to compel, Reebok did not say, we're not going to produce them. Reebok said, we will search and we'll produce if we find anything that's responsive. They then conducted a negligent search. Now, with respect to waiting and being dilatory before the District of Oregon, we've shown that after an initial sanctions motion that the judge imposed upon Reebok and Adidas because of their refusal to search the three European plaintiffs for any responsive documents, Judge Simon directed the parties not to contact him on a unilateral basis, but to contact him only in a joint statement. That joint statement took months to prepare and took hundreds of attorney hours because the way it worked was party A would take a position, we would respond, they would see our response, they would change theirs, we changed ours. It took months to accomplish that. It wasn't a lack of pursuit. It was because the judge wanted a single dispositive document addressing all the outstanding issues. That finally got filed. The judge rendered a decision over Reebok's objection. He directed them to undertake further searches and produce responsive documents, and in part that's what led to what happened on Friday. But it is also not in dispute that Reebok did represent that they have this aggressive document retention policy. And so, although we did get documents on Friday, that may be all the documents we ever get. There could be hundreds of documents more, thousands, dealing with this issue because it's clear from the documents we got that there was some friction between the leagues and Reebok about that decision to rebrand. Faced with that, what the district court should have done and abused its discretion by not doing was craft a resolution that would reduce the burden upon the leagues while still giving us documents that we require because for us it's a bet-the-company case. If we lose in Oregon, we're done. We're bankrupt, our marks are destroyed. And I know I'm about to run out, but if I can just suggest a way to craft this is we now know from the documents that we got on Friday the identity of at least one person at the leagues with whom Reebok communicated. It would not be expensive or extensive for counsel now to interview those individuals, find out from them who else received e-mails. An individual and then you said those individuals? Well, we're talking about two different leagues. So there was a person at the NHL and a person at the NFL. Counsel could, if the leagues were willing to engage in this discovery and respond to the subpoenas, query those individuals about who else on their teams would have been involved in dealing with Reebok on the decision to rebrand. And that might bring the number of potential custodians down from 17 to 3 or 4. And then all we're looking for from that limited group would be e-mail communications that they had with Reebok about the rebranding. Can you approach this through a 30B6 subpoena? I think if we had 30B6 directed to the leagues? Yeah, one to each league and say designate people and tell them what you want them to designate. It is an alternative way of doing it. We thought this would be simpler and less expensive because educating a 30B6 witness is a very costly and burdensome process. But there was a way, and the district court should have pursued it, and again abused its discretion by not doing so, to try to find a way to accommodate both our needs and the leagues' needs. We have no reason to impose unnecessary burdens on the leagues. We don't want them to be reviewing e-mails for people who have nothing to respond. But now that we've gotten these e-mails, there's a pathway. And even before then. How does this relate to the Oregon litigation? Well, the Oregon litigation now is in a state of flux. Now that you have these e-mails. Well, these e-mails that we got so far support our argument that at the time that Reebok shifted its branding from RBK to Reebok, it was not going to go back to RBK. It's not conclusive, but it's enough at least to create an issue of fact before that jury. The problem we have is we just got these documents on Friday. They're from one custodian who evidently must have saved them on his own. There could be hundreds of others, but we won't know that unless we get them produced. The problem is trying to coordinate these two things. You're asking us to take into account something that happened on Friday. We don't know if something else is going to happen this Friday and the following Friday, and you'll say each one supports your view that you should be given access to these. But, Judge Sack, there's no law that says we have to wait for Reebok to go through its process of producing responsive documents before asking the league. You're saying that proceeding is over or not? Well, we got documents on Friday. We had no advance notice. So fact discovery is in effect still continuing because Reebok and Adidas are under orders to search custodians both in the United States and in Europe for responsive documents because they had refused to do that in the first instance. The problem we have is given that document retention policy, even though this one custodian had documents, that may be it. The leagues have never represented either before Judge Cote or before this court that they have a similar policy. So there is no reason to believe that they, in the same way that Reebok has, destroyed the documents going back to 2007. They've never made that representation. So presumably they do, and presumably they have a wider universe of documents than we're ever going to get from Reebok. And there is simply no case law that supports the proposition that the process in Oregon has to conclude before the leagues have any burden at all to search for responsive documents. A subpoena can be served at any time in the course of the case. There were other subpoenas served here, one of which produced that backflips document. Reebok should have had that document, but they evidently did not. Let me ask you this. We have a mediation process. Have the parties been through mediation in connection with this? I'm not even sure whether discovery disputes go into mediation. This was never sent to a mediation process, but we would welcome that process. Perhaps, with the Chief's permission, you folks could confer just briefly and let us know through some simple communication whether you would like some time to see if you can work out a process before we hand down a decision. I suppose we could ask Camp to provide that service. I think that would be helpful here, and I think it would ultimately be beneficial to both sides. Having lost in the district court, I assume that you think anything that's different is better. It's hard to argue with that proposition, Judge, and I'm not sure why I would argue with that proposition, but yes. I think mediation is a way to do it, to achieve what we suggested back before Judge Cohn and what we've suggested here, which is that there is a way for us to get what we need without overburdening the leagues. We can talk about the time period at issue. I think there's a way, as I outlined before, where the leagues can identify more precisely potential custodians so that the scope of the search is narrowed. We're not looking for internal documents exchanged between league employees. We're simply looking for the e-mails, and there ought to be a way for us to craft that. And cases support the proposition that rather than simply denying a motion in its entirety, a district court judge faced with the facts that Judge Cohn was presented with should in fact attempt to craft a resolution that is suitable so that neither side is prejudiced. The subpoenaing party receives something of value, and the receiving party of that subpoena is not overburdened. And whether it's done by remanding this back to the lower court or by going through the camp process, either way is obviously better than where we are today, but more importantly, either way is correct and either way is consistent with what courts have held across the country in dealing with issues like this. Off-the-wall question, and that is, it seems odd that there is no communication, literally communication, between this district court and the district court in Arkansas. One would think in the real world rather than the world we all live in, I mean we lawyers all live in, you'd pick up the phone and say, hey, you're running this case, do you need this stuff or not? Rather than trying to figure it out yourself based on second-hand and third-hand evidence. But I take it there's no such procedure available. If there is, well, I'm unaware of any such procedure. It simply is, it's not something I would have privy to. Judges can always pick up the phone and talk to a judge in another district, and I doubt that there would be anything improper about that. And in fact, as you're suggesting, might have advanced this issue so that we wouldn't have to be here today. Because some of the concerns that Judge Coates stated, I think, could have been resolved by a conversation with Judge Simon. I ask Mr. Dreyer, would you be open to that proposal that Judge Hall made? I would have to obviously discuss it with my clients, and I would be happy to report back to the court within 24 hours on that issue. I think the concern we have is we actually made a proposal that the other side rejected that was limited to one or two custodians for each league and not four years but a narrow time period. We made that to avoid having to litigate before Judge Coates, before having to come here and burn this court, and they rejected it. Now that they've lost, they obviously are grasping at straws. But I understand the court's direction. I will, of course, discuss the issue with my clients, and we'll report back to the court shortly, Your Honor. Thank you. If I may just respond to the last remark. We felt that one custodian was simply insufficient. Under what I've outlined before, if they were to interview that custodian at each league, and now we know the names of the custodians who received those e-mails, they could determine from that custodian who else at the NHL, who else at the NFL, were involved in the rebranding discussions, and then that universe of people could be narrowed down. And we could talk about the time period, and we could talk about the number of custodians, but simply unilaterally suggesting that it be done with one person was something we just said. It was a pig in a poke. It's a discussion not for us, but that's if you go into mediation. I agree. Well, except that counsel said we rejected it, and now we're raising it because we lost below. But we raised it below, and we said there's another way to craft this. We can modify the subpoena. It isn't simply their way or the highway, and it isn't simply the motion to compel is denied in its entirety. It was up to the district court judge to attempt to accommodate both sides. And for the court to say, for example, she didn't think the material was important, there was simply no basis for that at all because that material could be. We have that argument. Thank you very much. I appreciate the court's attention.